OLYMPIC SHIPPING LINES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THOMAS FARESE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Olympic Shipping Lines v. Commissioner
Docket Nos. 16657-80, 40821-84
United States Tax Court
T.C. Memo 1991-623; 1991 Tax Ct. Memo LEXIS 669; 62 T.C.M. (CCH) 1546; T.C.M. (RIA) 91623; December 16, 1991, Filed *669 Decision will be entered under Rule 155. Thomas Farese, pro se. Julius Gonzales, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION These cases were heard by Special Trial Judge Peter J. Panuthos pursuant to section 7443A(b)(4) and Rules 180, 181 and 183. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: Respondent, in his notices of deficiency mailed on (1) June 4, 1980, and (2) September 18, 1984, determined the following deficiencies in Federal income taxes, respectively: Docket No.
Petitioner
Year
Deficiency
(1)
16657-80
Olympic Shipping Lines, Inc.
1977 [2]
$ 23,122.08
(2)
40821-84
Thomas Farese
1979
$ 42,641.34 [3]
*670 Timely petitions were filed with respect to each statutory notice. These cases were consolidated for trial, briefing, and opinion. The issues for decision are: (1) Whether Thomas Farese substantiated a claimed Schedule F farm loss; (2) whether Thomas Farese is liable for self-employment tax; (3) whether Olympic Shipping Lines, Inc., is entitled to certain claimed business expenses; and (4) whether Olympic Shipping Lines, Inc., is entitled to a claimed net operating loss. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing its petition, Olympic Shipping Lines, Inc. (hereinafter OSL) was a Florida corporation with its principal place of business in Fort Lauderdale, Florida. Thomas Farese (hereinafter petitioner or Farese) was the president of OSL. At the time of filing his individual petition herein, Farese resided at a Federal correctional institution in Talladega, Alabama. Petitioner was the owner of the Heritage Hill Farm, which was located in Marion County, Florida, and consisted of approximately 365 acres. During 1979, petitioner grew oranges and melons on this property. These crops were harvested and later sold. A portion *671 of the property was used by petitioner for horses and cattle. Petitioner bred thoroughbred horses. He was assisted in this activity by his wife, whom he married in March 1979. Petitioner's wife owned horses of her own which, together with petitioner's horses, totaled more than 50. Petitioner incurred expenses relating to this activity, including breeding fees, transportation expenses, veterinary fees, and feed expenses. Petitioner and his wife were members of several thoroughbred breeder associations and subscribed to several magazines relating to horses and horse breeding. Petitioner also owned an interest in Cinemagraphic International, a partnership which produced a motion picture in 1979. The movie, entitled "Hollywood Man," was filmed in Fort Lauderdale and in California and featured petitioner's brother, Jude Farese. Petitioner's brother Angelo Farese also appeared in the film. The film was sold at a loss. Farese filed his Federal income tax return for taxable year 1979 on October 19, 1981, and an amended individual income tax return, Form 1040X, on February 22, 1982. On the original return, [4] he reported Schedule F income resulting from the sale of produce and livestock *672 in the amount of $ 29,273. Petitioner also claimed $ 110,771 in Schedule F deductions on the return. Respondent disallowed the Schedule F farm loss claimed in the amount of $ 81,498, and the partnership loss claimed in the amount of $ 7,113. Respondent also determined that petitioner is liable for self-employment tax in the amount of $ 1,394.98. During 1975, OSL operated a shipping business. Its offices were located at 3200 East Oakland Park Boulevard in Fort Lauderdale although OSL also utilized space in warehouses owned either by Farese, or by partnerships in which Farese owned an interest, to store machinery, parts, and other equipment used in connection with its ships. OSL employed office personnel as well as persons to pilot and repair its ships. *673 In connection with its shipping operations, OSL relied heavily on its telephone and telegraph service to receive requests for bids and to communicate its responses to those requests. It incurred expenses with respect to the use of these services. OSL also incurred attorneys' fees for services rendered by Barry Roderman. Mr. Roderman represented OSL in miscellaneous legal proceedings brought against and by OSL during 1977. OSL also employed the accounting firm of David Whelan to prepare its Federal income tax returns. OSL paid Mr. Whelan a fee for these services. Other expenses incurred by OSL related to docking and harbormaster fees charged by the Port Everglades Authority when OSL docked ships at Port Everglades. OSL also incurred expenses for the repair and maintenance of vessels which it operated. OSL filed its Federal corporate tax return, Form 1120, for the fiscal year ended September 30, 1977, on January 25, 1979. OSL reported gross income in the amount of $ 76,296, and zero taxable income. The return also claimed a net operating loss deduction in the amount of $ 7,165. In his notice of deficiency, respondent disallowed deductions in the amount of $ 69,131 and the *674 claimed net operating loss deduction in the amount of $ 7,165. OPINION 1. Procedural Matters
As a preliminary matter, we will first address miscellaneous arguments made by petitioner and OSL during the years preceding the trial and during the trial. Initially, petitioner challenges the notice of deficiency issued to him individually as not timely mailed under section 6501(a). In his answer to the petition in docket No. 40821-84, respondent alleges that the return for 1979, required to be filed on or before April 15, 1980, was not received until October 19, 1981. Since the notice of deficiency was mailed on September 18, 1984, respondent contends that it was timely mailed. Section 6501(a) provides that any amount of tax imposed shall be assessed within 3 years after the return was filed. A return filed prior the due date is considered filed on the due date. Sec. 6501(b)(1). A return mailed after the due date is considered filed on the date of actual filing. , affd. . The party raising the bar of the statute of limitations must carry the burden of proof with respect *675 thereto. Rules 39 and 142(a); . Petitioner could not recall the exact date on which he mailed the return. His accountant, David Whelan, appeared at trial but offered no assistance on this issue. However, the copy of the executed return reflects a stamped received date by the Internal Revenue Service (IRS) of October 19, 1981. Petitioner's signature on the return bears the date October 12, 1981. We hold that the notice of deficiency was mailed within three years of the filing of petitioner's 1979 Federal income tax return. In the alternative, petitioner argues that he did not receive the notice of deficiency within the three-year period. He maintains that delivery of the notice was delayed because the envelope was addressed to him at the correctional institution where he was imprisoned, but not marked "legal mail." Since he actually received the notice, petitioner does not argue that it was not mailed to his "last known address." The petition which he filed in this Court was filed timely on December 10, 1984. The essence of the statutory scheme is to provide the taxpayer with actual notice of the notice *676 of deficiency. , affg. ; . Where ultimate delivery of the notice of deficiency is delayed by the manner in which it was addressed by respondent, such delay is not grounds for setting the notice aside unless the taxpayer is prejudiced by the delay. , affg. per curiam orders of this Court; . Even if a delay might have elapsed between the delivery of the notice to the correctional institution where petitioner was incarcerated and his personal receipt of the notice, petitioner was able to file a timely petition. Petitioner has not established the period of delay, nor has he demonstrated any prejudice which he suffered due to the alleged delay. . For these reasons, we hold that the notice of deficiency is valid as issued to petitioner. During trial, petitioner continuously raised objections *677 to the proceedings in general. He claimed that both he and OSL were the targets of selective examination by the IRS, that the Federal Bureau of Investigation (FBI) collaborated with the IRS and, therefore, that their rights to due process were abridged. He also charged respondent with constructive possession of any records that could substantiate the deductions at issue here, because those records are allegedly in the possession of the FBI or another Federal agency involved in the investigation which led to petitioner's subsequent indictment, conviction, and imprisonment for Federal offenses. In its simplest form, petitioner's argument is that these factors deny him and OSL due process of the law and that we should strike the notices of deficiency issued to them as invalid. Petitioner has failed to establish his claim. In any event, it is well settled that selectivity in examination does not violate a taxpayer's right to due process. ; see also (same as to prosecution of criminal tax violations). To the extent petitioner and *678 OSL request the Court to act in equity or grant other relief, we are without jurisdiction to entertain their requests. The Tax Court is a court of limited jurisdiction and acts only in matters prescribed by statute. ; see also ; . It does not have jurisdiction in equity. ; , affd. . Petitioner further alleges that he is prejudiced by the multiple continuances of these cases since records maintained by banks, service providers, and other third parties were destroyed in the interim. [5] With respect to this argument, we note that the only evidence of petitioner's attempts to obtain copies of records possessed by third parties occurred shortly before an October 1988 trial date. Responses to his inquiries indicate that most of the records already had been destroyed by that time. Other responses *679 to petitioner's requests for information state that additional information was required, which petitioner has not shown that he provided. Petitioner had ample opportunity prior to trial to seek to obtain copies of some documents, even considering the obvious hardships under which he functions. The examination of OSL's return occurred prior to Farese's conviction and incarceration. Presumably, at that time, many of the records which are now unavailable were readily available to Farese or his accountant, Mr. Whelan. Any prejudice is the direct result of Farese's failure to make reasonable efforts to obtain substantiation (assuming it exists) over the past decade. [6] *680 Even after arguing that the continuances in these cases have prejudiced him, petitioner renewed his motion for a short continuance during which he would attempt to contact witnesses and prepare his cases. [7] Petitioner was transported to the place of trial from the Federal facility at which he is usually imprisoned. At his resident facility, petitioner had access to law books, typewriters, and a public telephone (although long distance calls could be made collect only). During transit, petitioner had access to telephones and to his records. *681 Petitioner did not establish to our satisfaction that additional delay in bringing these cases to trial was justified, and we denied his request for additional time. However, the record was left open in order that petitioner could have the opportunity to supplement the record with certain documents which he sought to recover. On February 13, 1991, following receipt of several documents, we ordered those documents admitted in evidence and closed the record. Finally, at trial Farese requested assistance from the Court with respect to the payment of witness fees, service of subpoenas, and appointment of counsel. As we explained when we denied petitioner's Motion for Proceeding in Forma Pauperis, neither the Tax Court Rules of Practice and Procedure nor applicable statutes establish a program for indigent assistance. Parties who request subpoenas are responsible for having them served and for paying the fees and mileage to which the witness is entitled. Rules 147 and 148(c). Civil litigants enjoy no constitutional right to have the Federal Government pay their litigation expenses. . *682 This rule applies equally to litigants who appear before this Court. . At trial, we also denied Farese's requests for appointment of counsel. Many taxpayers petition this Court for review without the assistance of counsel, and we attempt to accommodate their unfamiliarity with the formalities of legal process. As we previously noted, petitioner has exhibited more familiarity with legal process than many of the pro se litigants who appear before us. Failure of the Court to provide counsel to a taxpayer does not impinge upon a taxpayer's right of due process of the laws. , affg. a Memorandum Opinion of this Court dated April 21, 1952; , affd. ; . 2. Substantive Issues
We turn now to the substantive issues of these cases. Petitioner has the burden of showing that respondent's determinations are erroneous. Rule 142(a); . *683 Deductions are a matter of legislative grace and petitioner must prove his entitlement thereto. . Respondent disallowed a claimed partnership loss in the amount of $ 7,113 and determined that petitioner was liable for self-employment taxes in the amount of $ 1,394. Petitioner failed to substantiate the loss incurred by the Cinemagraphic International partnership. Additionally, petitioner did not address his liability for self-employment taxes. Respondent is accordingly sustained as to these items. Respondent also disallowed petitioner's Schedule F Farm loss in the amount of $ 81,498. In disallowing the loss, as opposed to all the expenses claimed on Schedule F, respondent allowed deductions to the extent they did not exceed Schedule F income. Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. . A taxpayer is required to maintain records which substantiate these expenses as well as the deductible nature thereof. . *684 It is petitioner's burden to establish that he is entitled to deductions greater than those allowed by respondent. Rule 142(a); At trial, petitioner presented few records to substantiate the deductions which he claimed on his return. Records which may have assisted him in this effort were not presented to the Court during trial. [8] Although several witnesses testified on petitioner's behalf, their testimony was general and was not specific as to the amounts of expenditures or the dates incurred. Even petitioner himself could not recall the basis of some of the claimed expenditures. The record does not establish that petitioner is entitled to deductions in excess of those previously allowed by respondent. Accordingly, respondent's disallowance of the Schedule F form loss is sustained. *685 With respect to OSL, respondent disallowed expenses in the amount of $ 69,131. Respondent also disallowed a net operating loss deduction in the amount of $ 7,165 on grounds that OSL did not establish that it is entitled to such a deduction. As OSL did not present evidence with respect to the disallowance of the net operating loss deduction, respondent's disallowance is sustained. The record concerning the items deducted on OSL's corporate return is limited to receipts for towing fees, harbormaster fees, and related expenses incurred by OSL for docking one of its ships at Port Everglades for a period of time. OSL's attorney and its accountant testified at trial with respect to the services which they rendered to OSL. Petitioner, as the president of OSL, also testified regarding the expenditures made by OSL. He discussed each item only as it appears on the return and on the notice of deficiency. Farese's position was that the deductions claimed on the return were correct, but he could not give independent testimony as to the deductions claimed. Although the record is incomplete and the testimony vague with respect to the deductions at issue, we may estimate the amount a taxpayer *686 is entitled to deduct where the taxpayer provides us a means of making a reasonable estimate of the expense. . For this rule to apply, there must be sufficient evidence to show that at least the estimated amount was actually spent or incurred for the stated purpose. ; . We are satisfied that OSL incurred some expense in the conduct of its shipping business, though we find the limited information available insufficient to support the total deductions claimed. Therefore, on this record, we hold that OSL is entitled to deduct $ 9,082 for purposes of computing its income tax liability for fiscal year 1977. This amount includes a portion of the amounts paid for office supplies, telephone/telegraph, legal and accounting services, and management. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Fiscal year ended September 30, 1977. ↩
3. The face page of the notice shows a deficiency of $ 54,462.34. However, the statement of tax examination changes attached to the notice offsets this amount by the $ 11,821 in tax reported by petitioner on his return. In his petition petitioner alleges that the amount in dispute is $ 42,643.34. In his answer, respondent alleges the amount in dispute is $ 42,641.34 ($ 54,462.34 less $ 11,821).↩
4. On his amended return petitioner increased the loss claimed from the Cinemagraphic International partnership from $ 7,113 to $ 22,694, and adjusted his alternative minimum tax computation. The notice of deficiency does not take into account the amended return.↩
5. Since the date of filing the petitions, petitioner has been incarcerated in various Federal institutions. On two occasions, these cases were continued on petitioner's motion. In one of the motions, filed in 1984, petitioner requested that the cases be postponed until 1996, at which time petitioner apparently would have been released from prison.↩
6. While petitioner is pro se in these proceedings, we note that he has exhibited some sophistication concerning legal matters. Despite this, there is no record of attempts to obtain documents, informally or formally, in compliance with our rules.↩
7. Petitioner has been incarcerated since 1981 and claims that his incarceration has limited his ability to contact persons outside the prison. Additionally, he claims that his incarceration outside the State of Florida added to his inability to prepare his case.↩
8. The fact that petitioner claims these records to be in the possession of some administrative branch of the Federal Government does not move us to lessen the evidentiary burdens which he must carry. See ; . Further, we will not impute possession of the records to respondent, as petitioner requests. .↩